IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| WILLIAM SPRINKLE, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) CIVIL NO. 04-CV-4116-JPG |
| | ) |
| LOWE'S HOME CENTERS, INC., | ) |
| | ) |
| Defendant. | ) |
| | ) |

**MEMORANDUM AND ORDER**

This matter comes before the Court on Defendant Lowe's Home Centers, Inc.'s (Lowe's) motion for summary judgment (Doc. 33). Plaintiff William Sprinkle (Sprinkle) has responded (Doc. 36) and Lowe's has replied (Doc. 38). Lowe's has also filed a motion to strike certain exhibits offered by Sprinkle (Doc. 37). Sprinkle has filed affidavits intended to authenticate the exhibits in question (Docs. 41 & 42). For the following reasons, the Court will deny both Lowe's motion to strike (Doc. 37), and Lowe's motion for summary judgment (Doc. 33).

**SUMMARY JUDGMENT STANDARD**

Summary judgment is proper where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *see Celotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986); *Spath v. Hayes Wheels Int'l-Ind., Inc.,* 211 F.3d 392, 396 (7th Cir. 2000). The Court construes all facts in the light most favorable to the nonmoving party and draws all justifiable inferences in the nonmoving party's favor. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 255 (1986); *Spath,* 211 F.3d at 396.

The moving party has the burden of establishing that there is no genuine issue of material fact. *Celotex Corp.,* 477 U.S. at 323. If it meets this burden, the nonmoving party must set forth facts that demonstrate the existence of a genuine issue of material fact. Fed. R. Civ. P. 56(e); *Celotex,* 477 U.S. at 322-26; *Johnson v. City of Fort Wayne,* 91 F.3d 922, 931 (7th Cir. 1996). The nonmoving party must do more than cast "some metaphysical doubt as to the material facts," *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586 (1986); *Michas v. Health Cost Controls of Ill., Inc.,* 209 F.3d 687, 692 (7th Cir. 2000). Rather, the nonmoving party must demonstrate to the Court that the evidence is such that a reasonable jury could return a verdict in his favor. *Anderson,* 477 U.S. at 248; *Insolia v. Phillip Morris Inc.,* 216 F.3d 596 (7th Cir. 2000). Mere assertions of a factual dispute unsupported by probative evidence will not prevent summary judgment. *Anderson,* 477 U.S. at 248-250.

## BACKGROUND

**I.     Motion to Strike (Doc. 37)**

As a preliminary matter, the Court must define what evidence it will consider when ruling on the motion for summary judgment. Lowe's has asked the Court to strike certain exhibits offered by Sprinkle on the grounds that they have not been properly authenticated. Sprinkle has filed two affidavits in an attempt to properly authenticate these documents. Anniethabatha M. Bond (Bond), a paralegal with Sprinkle's attorney, signed an affidavit attesting she received Exhibits D, E, F, M, O and P from Lowe's during the course of discovery. Sprinkle signed an affidavit attesting to personal knowledge as to the authenticity of Exhibit G.

The evidence a party relies upon to defeat a motion for summary judgment must be of a type that is admissible at trial. *Haywood v. Lucent Techs., Inc.*, 323 F. 3d 524, 533 (7th Cir.

2003). Therefore, for purposes of summary judgment, the Court may only consider properly authenticated documents as evidence. *Scott v. Edinburg*, 346 F.3d 752, 759-760 (7th Cir. 2003).

"The requirement of authentication . . . as a condition precedent to admissibility is satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims." Fed. R. Evid. 901(a). Generally speaking, the proponent of the proffered evidence need only make a *prima facie* showing that the exhibit is what the proponent claims it is. *See United States v. Kelly*, 14 F.3d 1169, 1175 (7th Cir. 1994). Furthermore, circumstantial evidence is sufficient to establish the authenticity of a document. *United States v. Clark*, 649 F.2d 534, 542 (7th Cir. 1981). The proponent may establish authenticity by showing that the "[a]ppearance, contents, substance, internal patterns, or other distinctive characteristics, taken in conjunction with circumstances" indicate that the evidence is what he purports it is. Fed. R. Evid. 901(b)(4). When a party has produced the document in question in response to a subpoena or discovery request, he has implicitly authenticated the document. *United States v. Laurence*, 934 F.2d 868, 871-72 (7th Cir. 1991). Additionally, the Court may consider the internal contents of the document, particularly if the events alluded to in the documents are only known to a small group of people. Fed. R. Evid. 901(b)(4); *United States v. Smith*, 223 F.3d 554, 570 (7th Cir. 2000).

    A.    <u>Exhibit G</u>

Exhibit G appears to be a copy of a decision handed down from the Appeals Division of the Illinois Department of Employment Security. The captioning, format and substance of the document seem to be that of a decision issued from a state agency. Sprinkle has submitted an affidavit attesting that he has personal knowledge that the document is a true and correct copy of

a document provided to him by the Illinois Department of Employment Security. This is sufficient for a *prima facie* showing of authenticity.

    B.    <u>Exhibits E, F, O & P</u>

Exhibits E, F, O and P were all produced by Lowe's during discovery, as attested by Bond. Additionally, they appear to be documents of a type kept by a business such as Lowe's. The appearance of these documents in conjunction with the highly probative fact that they were produced by Lowe's during discovery is sufficient to authenticate the documents for purposes of the summary judgment motion.

    C.    <u>Exhibits D & M</u>

Exhibits D and M are authenticated by the fact that they came from Lowe's pursuant to discovery combined with the fact that they discuss matters known only to a small group of people. Specifically, Exhibit D appears to be a handwritten note dated February 18, 2003, and signed by George Donoho (Donoho), manager of Lowe's Mount Vernon, Illinois store in which Donoho relates a conversation he had on that date with Sprinkle, terminating Sprinkle's employment. Exhibit M appears to be an email between Lowe's loss prevention personnel discussing allegations, presumably known to only a few people, that the Mount Vernon store had "padded sales." As attested by Bond, these documents came from Lowe's pursuant to discovery in this case. That, added to the subject matter of the notes, authenticates the documents for purposes of the summary judgment motion.

In conclusion, the affidavits provided by Sprinkle combined with the circumstances, substance, appearances and contents of the documents in question support a finding that the documents are what Sprinkle purports they are. Therefore, the Court will deny the motion to

strike (Doc. 37), and may consider the documents for purposes of the summary judgment motion.

**II.     Facts**

Taken in the light most favorable to the non-moving party, the evidence establishes the following facts.  Lowe's hired Sprinkle in March 2002 to be a commercial sales consultant for its Mount Vernon store, where he quickly became one of the top salesmen in his district.  Because a commercial sales consultant sells building material and other Lowe's products to commercial contractors, Sprinkle's job often required that he work outside of the store.  In fact, Sprinkle's immediate supervisor, Richard Lautenbacher (Lautenbacher) told Sprinkle he should hardly ever be in the store; instead he should be out getting sales.[1]  Lowe's would reimburse Sprinkle for milage when he traveled to and from customer's construction sites if he turned in an expense report.  Lowe's written policies required that Sprinkle report all hours he worked for the company, and also forbid employees to work off-the-clock, drink alcohol during work hours, or issue false or misleading documents or reports.  Additionally Lowe's expected all employees to "devote their full time to the Company's interest during regular hours of employment."

Sprinkle had read and was aware of Lowe's written policies.  However, during the course of his employment, Mount Vernon store manager Phil Hornbeak ( Hornbeak) told Sprinkle to disregard some of those policies.  Specifically, Hornbeak told Sprinkle, in the presence of

---

[1] The Court will regard statements by all Lowe's employees acting in a managerial capacity as party admissions.  Fed. R. Evid. 801(d)(2).  This includes statements made by Winn, Hornbeak, Donoho, Switzer and Lautenbacher.

Lautenbacher, to do blueprint "takeoffs"[2] from his home, because customers often interrupted Sprinkle during takeoffs at the store.  Hornbeak also told Sprinkle to take potential customers out for meals and drinks in order to get them to place their orders with Lowe's, adding that it was fine if Sprinkle had a drink with customers, but he should avoid returning to the store that day.  Additionally, when Sprinkle expressed his concern to Hornbeak about his ability to remember correct dates for expense reports, Hornbeak told him not to worry about correct dates, just approximate milage.

      Hornbeak also told Sprinkle about a practice called "bogus sales," which could be used to give store managers a temporary boost in sales numbers.  "Bogus sales" are a subset of "committed sales," a common practice in the industry, which allows sales specialists to hold items at a certain price for a customer by placing the cost of the items on the customer's account.  A Lowe's employee running a bogus sale would run committed sales on items that had not been authorized by customers.  Hornbeak told Sprinkle that Lowe's employees would run bogus sales during weeks when a store's sales were bad and would reverse them when sales were good.  The customer would never see the charges, and no harm would be done.  Hornbeak's supervisor Dennis Winn (Winn) had participated in bogus sales when Winn was a Lowe's store manager and continued to condone the practice.  Loretta Switzer (Switzer), a supervisor in another department, told Sprinkle that bogus sales had been going on for years.

      Hornbeak asked both Sprinkle and commercial sales specialist J. D. Cross (Cross) to run bogus sales for him, but both refused.  However, Cross believed that others had run bogus sales

---

[2]A takeoff is a practice whereby a customer gives a Lowe's employee a blueprint from which the employee determines the amount and cost of necessary building materials.

under his unique employee number without his knowledge.  Sprinkle informed Hornbeak and other Lowe's employees that he had spoken with his lawyer, and that he believed running bogus sales was illegal and he would not participate in them.  Not long after, Winn told other Lowe's managers that he was looking for an excuse to fire Sprinkle.  In August 2002, Hornbeak gave Sprinkle a written "initial notice" for violating Lowe's policy by writing down another associate's price override code.

In November 2002, Hornbeak transferred to Lowe's Carbondale, Illinois store and Donoho replaced him as store manager at the Mount Vernon store.  Sprinkle continued to follow the same practices he had followed under Hornbeak regarding doing blueprint takeoffs at home, taking contractors out for meals and drinks, and paying little attention to the dates on expense reports for milage reimbursements.  Shortly after Donoho's arrival at the Mount Vernon store, Sprinkle went behind the customer service desk.  When an assistant store manager informed Sprinkle that he was violating store policy by being there, Sprinkle became verbally abusive.  In response, Donoho gave Sprinkle a written "final notice" for insubordination, warning him that future instances of insubordination could result in termination.

In early 2003, Donoho became suspicious of how Sprinkle was spending his time outside of the store.  Donoho asked loss prevention specialist Alex Rusher (Rusher) to follow Sprinkle to ensure that Sprinkle followed Lowe's policies when he worked outside of the store.  On January 24, Rusher and fellow loss prevention specialist Terri Gerton (Gerton) followed Sprinkle to his home where he stayed for an hour and a half, then followed him back to the store.  Sprinkle knew about the surveillance and complained to Donoho that he found it degrading.  He told Donoho that Gerton and Rusher had followed him to his house where he had gone to do

blueprint takeoffs. Donoho told Sprinkle not to worry about the surveillance and to keep on doing what he had been doing. On February 3, Sprinkle sent Donoho an email complaining that he felt Donoho did not trust him. He told Donoho that he sometimes visited his family or friends while on-the-clock, but made up for it by working on behalf of Lowe's off-the-clock, for instance by taking contractors out to breakfast or having them over for dinner.

Later that month, Sprinkle turned in an expense report for milage reimbursement for a trip to Bonnie, Illinois which he erroneously claimed he had taken on January 24. On February 18, loss prevention manager Steve Meadows (Meadows) and Rusher confronted Sprinkle with the erroneous expense report. Sprinkle admitted he did not record his milage daily, and sometimes made mistakes as to the exact number of miles traveled or the exact dates of travel. During the course of the interview with Rusher and Meadows, Sprinkle reiterated what he had said in his email to Donoho: that he sometimes took breaks while on-the-clock, but made up for it by working off-the-clock.

At the conclusion of the interview, Donoho entered the room and, with prior approval from Winn, told Sprinkle that he was being fired for violations of Lowe's policies. Sprinkle filed for unemployment insurance benefits which, upon appeal, were granted.[3] Sprinkle then brought suit against Lowe's charging that he was wrongfully fired in retaliation for refusing to

---

[3]Sprinkle presented the findings of fact from the Illinois Department of Employment Security Appeals Division as evidence to support his claim that Lowe's at one time asserted they fired Sprinkle for taking contractors out for breakfast. However, because Lowe's did not appear for the hearing at which the findings of fact were determined, the Court cannot infer that Lowe's ever made such an assertion.

take part in bogus sales.[4]

## ANALYSIS

**I.     Retaliatory Discharge**

Because this case is a diversity action, the Court must follow the common law of Illinois. *Erie R.R. v. Tompkins*, 304 U.S. 64 (1938). In Illinois, an employer may discharge an at-will employee, such as Sprinkle, for any reason or for no reason at all. *Pratt v. Caterpillar Tractor Co.*, 500 N.E.2d 1001, 1002 (Ill. 1986). One exception to that rule is the tort of retaliatory discharge. *Brandon v. Anesthesia & Pain Mgmt. Assocs., Ltd.*, 277 F.3d 936, 940-41 (7th Cir. 2002). The Illinois Whistleblower Act (Act) is the codification of this common law. *Sutherland v. Norfolk Southern Ry. Co.*, 826 N.E.2d 1021, 1025 n.4 (Ill. App. Ct. 2005). The common law test for retaliatory discharge often focused parties' attention on whether the plaintiff was able to articulate a "clearly mandated public policy." *Pratt*, 500 N.E.2d at 1002; *Palmateer v. Int'l Harvester Co.*, 421 N.E.2d 876 (Ill. 1981). However, Illinois courts have established that the "clear mandate of public policy" standard is met when an employee is fired for refusing to engage in illegal activity or for reporting the illegal conduct of others, and the Act codifies this reasoning as well. *Palmateer* 421 N.E.2d at 879; *Stebbings v. Univ. of Chicago*, 726 N.E.2d 1136, 1144. The Act provides that

---

[4] Sprinkle also alleged that he was fired for making a statement in favor of an African-American co-worker, Lylie "Buddy" Martin, who was suing Lowe's for racial discrimination. However, to the extent that Sprinkle alleges Lowe's conduct is in violation of Illinois state law, any such claim is preempted by the Illinois Human Rights Act, 775 ILCS 5/1-101 *et seq.*, and Illinois state courts (and federal courts sitting in their stead) lack jurisdiction over such claims, which proceed instead in front of the Illinois Human Rights Commission. *See Mein v. Masonite Corp.*, 485 N.E.2d 312, 315 (Ill. 1985). To the extent that Sprinkle alleges Lowe's conduct violates Title VII, he has failed to state a cause of action because he has not shown that he exhausted his administrative remedies. *See Rush v. McDonald's Corp.*, 966 F.2d 1104, 1110 (7th Cir.1992).

"[a]n employer may not retaliate against an employee for refusing to participate in an activity that would result in a violation of a State or federal law, rule or regulation." 740 ILCS 174/20 (2004). Illinois law does not require that the activity in question actually be against the law, only that the employee had a good faith reasonable belief that it was. *Stebbings*, 726 N.E.2d at 1144.

The employer must actually discharge the employee in order for the employee to state a claim under the Act, as Illinois courts have consistently refused to expand the tort of retaliatory discharge to encompass adverse employment actions short of actual discharge. *See Barr v. Kelso-Burnett Co.*, 478 N.E.2d 1354, 1356 (Ill.1985) (finding the Illinois Supreme Court does not "strongly support" the expansion of the tort); *Hartlein v. Illinois Power Co.*, 601 N.E.2d 720, 730 (Ill.1992) (refusing to expand the tort of retaliatory discharge to encompass constructive discharge). Therefore, in order to succeed on a retaliatory discharge claim under the Act, the plaintiff must prove that 1) he was discharged from his employment, and 2) his discharge was in retaliation for his refusal to participate in an activity that he reasonably believed would result in a violation of a State or federal law, rule or regulation. Because Lowe's admits that it discharged Sprinkle, the Court's focus will be on whether Sprinkle has shown that Lowe's discharged him in retaliation for taking part in a protected activity.

**II.     Framework for Showing Retaliation**

The Court may analyze an Illinois retaliatory discharge case using the burden-shifting *McDonnell-Douglas* framework, *Carter v. Tennant Co.*, 383 F.3d 673, 677-78 (7th Cir. 2004), despite the concerns of the Illinois Supreme Court that such a framework improperly reduces the plaintiff's burden of proving all the elements of the tort. *Clemons v. Mech. Devices Co.*, 704 N.E.2d 403, 407-08 (Ill. 1998). To establish a *prima facie* case for retaliatory discharge in violation of the

Act under the *McDonnell-Douglas* framework, Sprinkle must show: 1) that he engaged in a protected activity; 2) that he was performing his job satisfactorily and was nevertheless fired, and 3) that others who did not engage in the protected activity were treated more favorably than he was. *Carter,* 383 F.3d at 678. If Sprinkle makes out a *prima facie* case, the burden shifts to Lowe's to articulate a legitimate, non-discriminatory reason for his termination. *Id.* If Lowe's presents such a reason, the burden then shifts back to Sprinkle to show that Lowe's proffered reason is nothing more than a pretext for unlawful discrimination. *Id.* If the employee does not refute a valid reason given by the employer for his termination, he cannot prevail. *Carter,* 383 F.3d at 678.

  A.  <u>Sprinkle Engaged in Protected Activity About Which Lowe's May Have Known</u>

Sprinkle meets the first prong of the *McDonnell-Douglas* test because he refused to participate in a practice he reasonably believed to be illegal. Sprinkle suspected that bogus sales were illegal, and consulted a lawyer to confirm his suspicions. Then he informed Lowe's that he believed bogus sales were illegal and refused to take part in them. Therefore, Sprinkle can show that his belief was reasonable and held in good faith. Accordingly, his refusal to engage in bogus sales constituted a protected activity.

Additionally, a jury could reasonably find that Lowe's was aware Sprinkle had engaged in protected activities when it fired him. Lowe's argues that Donoho made the decision to fire Sprinkle, and that Donoho was unaware that Sprinkle had engaged in a protected activity. However, a jury could reasonably infer that Winn actually made the decision to fire Sprinkle because Donoho did not have the authority to fire Sprinkle without Winn's approval. A jury could also reasonably conclude that Winn was aware that Sprinkle engaged in protected activities because many of the Mount Vernon employees knew and communicated regularly with Winn. Therefore, a reasonable

jury may conclude that Sprinkle meets the first element of his *prima facie* case. Sprinkle may also meet the other elements of a *prima facie* case for retaliatory discharge.

   B. <u>Sprinkle May Have Been Performing Satisfactorily When He Was Fired</u>

Sprinkle has presented evidence from which a reasonable jury could conclude that he was performing satisfactorily when he was discharged. While under surveillance by Lowe's, Sprinkle violated some of Lowe's written policies, and later admitted to the violations in his email to Donoho and in his interview with Rusher and Meadows. However Hornbeak, in Lautenbacher's presence, told Sprinkle he could disregard some of Lowe's policies. While Hornbeak was no longer the Mount Vernon store manager, Lautenbacher was still Sprinkle's immediate supervisor so a jury could find that Lowe's expectations of Sprinkle had not changed. Additionally, although he had some disciplinary infractions on his employment record, Sprinkle was one of his district's top sales consultants. In light of this, a jury could reasonably conclude that Sprinkle was performing his job to Lowe's satisfaction, but Lowe's fired him anyway. Therefore, Sprinkle has shown that there is a genuine issue of material fact as to whether he was performing his job satisfactorily when he was discharged. Accordingly, if Sprinkle can show that similarly situated employees who ran bogus sales were treated more favorably than he was, he can make a *prima facie* case under the *McDonnell-Douglas* framework for retaliatory discharge.

   C. <u>Lowe's May Have Treated Similarly Situated Employees Who Did Not Engage in Protected Activities More Favorably</u>

Sprinkle has presented sufficient evidence from which a reasonable jury could conclude that Lowe's gave more favorable treatment to its employees who did agree to run bogus sales. A jury could reasonably conclude that Sprinkle was allowed to violate Lowe's policies prior to notifying Hornbeak that he would not run bogus sales, but was fired for the same behavior after his refusal to

12

Case 4:04-cv-04116-JPG-PMF    Document 45    Filed 07/19/06    Page 13 of 13    Page ID #475

run bogus sales. Therefore, a jury could conclude that Sprinkle was fired by Lowe's for violating policies that an employee who agreed to run bogus sales would have been permitted to violate. As such, there is a genuine issue of material fact as to whether Lowe's treated similarly situated employees who ran bogus sales more favorably than those who did not. In conclusion, a jury may reasonably find that Sprinkle has made a *prima facie* case for retaliatory discharge.

        D.      Lowe's Articulated Reasons for Firing Sprinkle May Be Pretext for Retaliation

In addition to finding that Sprinkle has proved a *prima facie* case for retaliatory discharge, a reasonable jury could conclude that Lowe's stated reasons for terminating Sprinkle's employment are pretextual. Lowe's fired Sprinkle after it had placed him under surveillance and gathered proof that he was violating company policies. However, a jury could conclude that absent a retaliatory motive, Lowe's would not have fired an employee for violating those company policies. Accordingly, a reasonable jury could find that Lowe's stated reasons for discharging Sprinkle are merely pretext for retaliation.

In conclusion, the Court finds that there is evidence from which a reasonable jury could return a verdict in favor of Sprinkle. Therefore, summary judgment is inappropriate at this time.

## CONCLUSION

For the forgoing reasons, the Court **DENIES** Defendant's Motion to Strike (Doc. 37), and **DENIES** Defendant's Motion for Summary Judgment (Doc. 33).

**IT IS SO ORDERED.**
**DATED: July 19, 2006**

                                      s/ J. Phil Gilbert
                                      **J. PHIL GILBERT**
                                      **DISTRICT JUDGE**

13